838 P.2d 1303

**In the Matter of the APPEAL IN MARICOPA COUNTY JUVENILE ACTION NO. JV–122733.**

**STATE of Arizona, Appellant,**

v.

**Steven Ellis WALKER, Appellee.**

Nos. 1 CA–JV 91–014, 1 CA–CR 91–1166.

Court of Appeals of Arizona, Division 1, Department C.

Feb. 4, 1992.

Review Denied Nov. 3, 1992.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Div., Richard M. Romley, Maricopa County Atty. by Jeffrey W. Pitts, Deputy County Atty., and Arthur Hazelton, Deputy County Atty., Phoenix, for appellant.

Debus & Kazan, Ltd. by Larry L. Debus and Tracey Westerhausen, Phoenix, for appellee.

## OPINION

JACOBSON, Judge.

These two consolidated appeals [1] by the state from an order of the juvenile court (1 CA–JV 91–014) and the dismissal of a crim-

---

1. This court initially had under advisement the consolidation request. By this opinion, that re-

quest is granted.

inal indictment (1 CA–CR 91–1166) require us to determine what authority a juvenile court has in transferring a juvenile to superior court for criminal prosecution to restrict the charges that may be considered by a grand jury in the adult prosecution.

## FACTS AND PROCEDURAL BACKGROUND

On September 22, 1990, Steven Walker allegedly shot and killed David Rametta.[2] At that time, Walker was seventeen years old and would become eighteen on April 28, 1991. The state charged Walker in juvenile court with first degree murder and requested that he be transferred to superior court for prosecution.

During the transfer hearing, the juvenile court found probable cause to believe that the crime of first degree murder occurred and that Walker committed this crime. *See* Rule 14(b), Arizona Rules of Procedure for the Juvenile Court. After determining whether Walker should be transferred to superior court for prosecution as an adult for this crime, *see* Rule 14(c), the juvenile court granted the state's request to transfer but limited the transfer to the offense of voluntary manslaughter, a class 3 felony.[3] In doing so, the juvenile court adopted an "intermediate position which best accommodates the interests of society and the juvenile," stating:

> This Court is faced ... with two unacceptable, extreme alternatives, either deny transfer and run the risk that we lack an adequate time to provide services to the child or transfer the juvenile on the

charges of burglary in the first degree and murder in the first degree, the latter having a mandatory penalty of either death or life imprisonment without possibility of parole for twenty-five years.

It is from this order that the state appeals in JV 91–014.

Following the transfer, the state presented the matter to a grand jury, which returned an indictment for first degree murder. Walker moved to dismiss this indictment based upon the juvenile court's order limiting prosecution to voluntary manslaughter. This motion was granted, and the indictment was dismissed without prejudice.

In the meantime, Walker turned eighteen, and the state presented its case again to a grand jury, which again indicted him for first degree murder. Walker's motion to dismiss was again granted without prejudice. This dismissal forms the basis of the state's appeal in CR 91–1166.

## DISCUSSION

Central to both appeals is the validity of the juvenile court's transfer order limiting prosecution to voluntary manslaughter after finding probable cause to believe that Walker committed the crime of first degree murder.[4] The state essentially argues that, having found probable cause to prosecute for first degree murder and having found that the juvenile should be transferred to superior court for prosecution as an adult, the juvenile court had no further authority to control proceedings in superior court.[5] In response Walker argues that,

2. Although in a juvenile appeal we normally do not refer to the juvenile by name, we do so in this case because the juvenile appeal has been consolidated with the appeal from superior court, rendering academic any considerations of confidentiality.

3. Walker was also charged in juvenile court with burglary, and the juvenile court denied the state's request to transfer this charge. The question whether a juvenile court may retain jurisdiction of a juvenile for one crime while transferring him for prosecution as an adult for another crime is not before us.

4. We do not determine whether a finding that probable cause existed only as to a lesser-includ-

ed offense would justify a transfer order limited to prosecution of that lesser-included offense. Nor do we determine whether the juvenile court's order has any validity after Walker turned eighteen.

5. Although a juvenile judge is a judge of the superior court, there is a qualitative difference between the functions and authority a judge may exercise as a juvenile judge and those which the same judge could exercise when sitting as a superior court judge. *Maricopa County Juvenile Action No. J–96215*, 135 Ariz. 185, 188 n. 1, 659 P.2d 1330, 1333 n. 1 (App.1983). It is in this sense that this opinion uses the terms "juvenile court" and "superior court" to distinguish between prosecution in juvenile court and

because the Arizona Constitution gives exclusive jurisdiction over juveniles to the juvenile court, that court has the power to dictate what charges may follow a juvenile in subsequent prosecutions in superior court. This is a case of first impression in this state.

In granting authority to the "juvenile court" to deal with juveniles, the Arizona Constitution provides:

> The superior court shall have exclusive original jurisdiction in all proceedings and matters affecting dependent, neglected, incorrigible or delinquent children, or children accused of a crime, under the age of eighteen years. The judge shall hold examinations in chambers for all such children concerning whom proceedings are brought, in advance of any criminal prosecution of such children, and may, in their discretion, suspend criminal prosecution of such children. The powers of the judges to control such children shall be as provided by law.

Ariz. Const. art. VI, § 15. It is clear from this language that the terms "children accused of a crime" and "criminal prosecution" refer to the adult criminal liability of children. Otherwise, there would be no reason to distinguish between a "delinquent" child who, by statute, is one who commits an act "which if committed by an adult would be a criminal offense," *see* A.R.S. § 8–201(9) and (10), and "children accused of a crime." Thus, it is the suspension of "criminal prosecution," that is, prosecution of juveniles as if they were adults, which is left to the discretion of the superior court judge sitting as a juvenile judge.

When viewed in this context, the juvenile court acts as a shield against any attempt by the state to prosecute the juvenile as an adult. *See State v. Myers,* 116 Ariz 453, 569 P.2d 1351 (1977) (state could not prosecute juvenile defendant under the jurisdiction of the juvenile court as an adult).

However, the power of the juvenile court over juveniles is not unlimited; rather, "the powers of the judges to control such chil-

prosecution of that juvenile as an adult in supe-

dren shall be as provided by law." Ariz. Const. art. VI, § 15. Consequently, even when the juvenile court exercises its constitutional authority over juveniles, it must do so within the confines of legislative enactments. *State v. Collins,* 122 Ariz. 550, 596 P.2d 385 (App.1979) (the power of the juvenile court to make a particular disposition of a delinquent child is limited by A.R.S. § 8–241); *Maricopa County Juvenile Action No. J–74275,* 117 Ariz. 317, 572 P.2d 451 (App.1977) (the power of the juvenile court is limited in that it must be expressly granted by legislative act).

The legislature has not concerned itself with the process by which the juvenile court exercises its discretion in suspending criminal prosecution of juveniles. That process has been left to the rulemaking power of the Arizona Supreme Court, which is expressed in Rules 12 and 14, Arizona Rules of Procedure for the Juvenile Court. Pursuant to these rules, adult prosecution of a juvenile commences by motion of the county attorney "clearly designat[ing] the offense or offenses for which the transfer is sought." Rule 12(a).

From this language, Walker argues that, because the state must designate the charges in juvenile court, the juvenile court must be able to designate the charges for which transfer is made. Aside from the concerns we have as to the power of the supreme court under its procedural rulemaking power to create such substantive jurisdiction in the juvenile court, this language simply does not warrant such an interpretation. Rather, it appears that the designation requirement is to allow the juvenile court to assess the charge so that it can intelligently make the decisions necessary under Rule 14—to determine probable cause and whether transfer should occur.

Walker points to no other authority authorizing a specific disposition upon a transfer order. As the juvenile court is limited in the disposition it can make of a juvenile while exercising its juvenile jurisdiction, we believe the juvenile court is likewise limited in the disposition it can

rior court.

make of a juvenile once it removes the shield of protection from adult prosecution.

We reach this conclusion for several reasons. First and most obvious, the legislature under its constitutional power has not granted the juvenile court such extended authority. Second, the entire juvenile court structure, when dealing with a juvenile who commits a delinquent act, is based upon a division of authority between the juvenile court and its personnel (probation officers, staff, etc.) and the superior court. Title 8 of the Arizona Revised Statutes provides a comprehensive procedure for dealing with delinquent juveniles by the juvenile court, while Title 13 provides comprehensive procedures for prosecution of adults. If the juvenile court relinquishes its statutory authority, a transfer shall be made "to the appropriate court having jurisdiction of the offense," Rule 14(d), and "the child shall be transferred to the custody of an appropriate law enforcement officer." Rule 14(e). In short, both the legislative enactments and the rules make it clear that the jurisdiction of the juvenile court to exercise control over the juvenile for the crime for which transfer is sought ends when the transfer is ordered.

Finally, there are cogent reasons based upon separation of powers for terminating the power of the juvenile court to control the charges that may flow from the acts for which transfer is sought. Even when exercising its constitutionally granted power over juveniles, the judicial branch cannot usurp the exclusive authority of the executive branch in determining whether to initiate delinquency proceedings in juvenile court. *See McBeth v. Rose*, 111 Ariz. 399, 531 P.2d 156 (1975); *Maricopa County Juvenile Action No. J-81405-S*, 122 Ariz. 252, 594 P.2d 506 (1979); *Maricopa County Juvenile Action No. J-101252*, 149 Ariz. 126, 716 P.2d 1063 (App.1986).

Likewise, once the juvenile court has exercised its power to determine probable cause and whether transfer for prosecution as an adult should occur, it is solely within the province of the state to determine what charges may be initiated against the juvenile based on the acts for which transfer

was made. *Cf. State v. Frey*, 141 Ariz. 321, 686 P.2d 1291 (App.1984) (trial judge cannot usurp the prosecutor's discretion by reducing a criminal charge before trial); *State v. Murphy*, 113 Ariz. 416, 555 P.2d 1110 (1976) (trial judge without authority to direct prosecutor to place evidence of aggravating circumstances in evidence).

Based upon the foregoing, that portion of the juvenile court's order limiting the charges that may be brought against Walker in superior court is stricken. In the appeal from the superior court's order of dismissal of the first degree murder charge, that dismissal is reversed and the matter remanded with instructions to reinstate the indictment.

GRANT, P.J., and KLEINSCHMIDT, J., concur.